**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**YUSUF EYMEN CICEK,**

*Petitioner,*

v. No. 2:26-cv-03493-BCL-tmp

**FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ENFORCEMENT AND REMOVAL OPERATIONS, NEW ORLEANS FIELD OFFICE, IN AN OFFICIAL CAPACITY**

*Respondent.*

---

**ORDER DENYING HABEAS PETITION**

---

Petitioner is a Turkish citizen currently detained at the Western Tennessee Detention Facility located in Mason, Tennessee. Doc. 1 at 3. Petitioner was arrested and detained by immigration officials pursuant to Sections 236, 8 U.S.C. § 1226 and 287, 8 U.S.C. § 1357 of the Immigration and Nationality Act. Doc. 8 at 2. Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C § 2241, by which he seeks immediate release, or, alternatively, an individualized bond hearing. Doc. 1 at 2. In support, Petitioner alleges his detention violates the Due Process Clause because he was not provided with a pre-detention hearing. Doc. 1 at 16. At the Court's direction, Respondent provided a response. Doc. 8. Petitioner thereafter filed a reply. Doc. 10. For the reasons that follow, the Petition is **DENIED**.

**I. Petitioner's statutory arguments claiming unlawful detention in the absence of an individualized bond hearing (Counts I and II) are dismissed for lack of administrative exhaustion.**

In Counts I and II, Petitioner claims that he is detained under 8 U.S.C. § 1226(a) (not § 1225(b)(2)) and that he therefore is entitled to an individualized bond hearing that he has not yet received. The Government acknowledges that Petitioner is detained under Section 1226 and that he therefore may obtain a bond hearing. Doc. 8 at 4. But Petitioner has not requested a bond hearing.

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). While exhaustion is prudential in this context, exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted). And the doctrine counseling exhaustion arguably helps to protect and promote the separation of powers, insofar as it leaves it to the Executive Branch to make the call in the first instance, without the Judicial Branch jumping in to dictate the results before the Executive has had an opportunity to reach a final decision on the Petitioner's claim through its own processes. *See Smith v. U.S. Sec. & Exch. Comm'n*, 178 F.4th 312, 325 (6th Cir. 2026) ("This rule is designed to afford the agency the opportunity to reconsider its position in the first instance, and to promote efficient litigation." (citing *Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669, 673 (6th Cir. 2018))). Petitioner offers no argument that prudential

administrative exhaustion should be excused.[1] Petitioner must exhaust his administrative remedies before seeking judicial relief from this Court.

**II. Petitioner's due process claim fails on the merits.**

Petitioner also claims when the Government detained him in October 2026, the Government violated the Fifth Amendment's Due Process Clause by failing to provide him with a pre-detention hearing—a procedure Petitioner claims was mandated because he had earlier been released following an immigration-related detention in 2023.[2] Doc. 1 at 16–18. The Constitution does not impose the rule Petitioner seeks.

**A.** To begin, Petitioner has identified no authority suggesting that the original public understanding of the Due Process Clause included a rule requiring a hearing *before* the Government may detain an alien (or re-detain an earlier released alien) pending removal proceedings. Petitioner's failure to ground his argument in the Constitution's original public meaning should alone doom his claim.

**B.** Precedent confirms the point. While Petitioner in passing cites two Supreme Court decisions in support of a pre-detention hearing, neither involved issues of immigration and removal, where the Constitution permits "rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). *See* Doc. 1 at 17 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (pretermination hearing for public employee); *Zinermon v.*

---

[1] Petitioner does offer a less than pellucid argument that exhaustion should be excused if he is detained under Section 1225. Doc. 9–10. The lack of clarity would prevent addressing that argument on its merits, but that is of no moment here, where Petitioner is detained under Section 1226 such that the premise of Petitioner's exhaustion argument is not triggered.

[2] In his Reply, Petitioner appears to challenge the Government's compliance with the statute (Section 1226) in detaining him on the ground that the warrant was issued during or after (and not before) his encounter with law enforcement in Mississippi. Doc. 10 at 4–5. Petitioner did not present this argument in his Petition and he therefore has forfeited it. Though irrelevant to the bottom line, the Court also notes that: Petitioner has not demonstrated that his immigration arrest and detention occurred before issuance of the warrant; and (2) in any event, under Section 1226(b), the Government was authorized to "rearrest" Petitioner under the original warrant.

*Burch*, 494 U.S. 113 (1990) (precommitment procedure for those involuntarily committed to mental institutions)). Moreover, even with respect to citizens, the Supreme Court has *rejected* the proposition that the Constitution requires a pre-detention hearing before a parolee may be taken back into custody. *See Moody v. Daggett*, 429 U.S. 78, 86 (1976) ("[T]here is no requirement for an immediate hearing" "before the parolee is taken into custody."). Rather, a parolee may receive a hearing after he is detained. *See Morrissey v. Brewer*, 408 U.S. 471 (1972) ("In our view, due process requires that *after* arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case" "as promptly as convenient *after* arrest") (emphasis added)). The Constitution does not require *more* process in the immigration context—and, of course, Petitioner may receive a post-detention hearing by exhausting his administrative remedies.

**C.** Everything said so far should suffice to foreclose Petitioner's constitutional claim. But still, Petitioner (oh-so-briefly) involves *Mathews v. Eldridge*, 424 U.S. 319 (1976). Doc. 10 at 3. That loose and judge-empowering test for assessing procedural due process claims, divorced from history and tradition and crafted in the context of a case involving termination of public benefits, is a poor fit for this situation involving immigration, where the political branches rightly have a great deal of power that should not be curtailed through application of a malleable, judge-made and judge-empowering test. But that consideration has apparently not dissuaded the Supreme Court, which has applied the *Mathews* test in the immigration context. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Therefore, in an abundance of caution and in the interest of a fulsome analysis, the Court will apply the *Mathews* factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural safeguards"; and (3) "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” 424 U.S. at 335.

The *Mathews* test does not require that the Petitioner be provided with a pre-detention hearing before arrest.

*First*, an alien’s interest in freedom from detention is weighty. Even still, that interest is reduced here in two ways: (1) Petitioner is an alien facing removal proceedings, which reduces the weight accorded his liberty interest in the due process analysis, *see Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022), and (2) the detention would last only during the course of removal proceedings—and, really, until a post-detention hearing—meaning it is time limited and therefore less obtrusive. In any event, even if the liberty interest is treated with the same weight as it has been given in other cases, including those involving American citizens or persons in non-immigration proceedings, it is here outweighed by the other *Mathews* factors.

*Second*, a pre-detention hearing would only marginally reduce the risk of erroneous detention. Bear in mind that the alien already is entitled to a prompt bond hearing following detention—it is there for the asking. So the (for sake of argument) erroneous detention that would be avoided, if any, is the period from the initial detention to that bond hearing. Petitioner has offered no support for the proposition that a pre-deprivation hearing would meaningfully reduce the number of erroneous detentions pending a post-detention hearing; indeed, pre-detention hearings are likely to be rushed and relatively informal—because they must occur before a detention—making them less accurate. For similar reasons, the Supreme Court in the criminal parole context has reasoned that an informal post-detention hearing suffices. *Morrissey*, 408 U.S. 471, 484. Here, the alien is allowed a *formal* post-detention bond hearing. This factor therefore weighs against Petitioner’s constitutional claim.

Even if that were not so, the third factor would compel rejection of Petitioner's claim. The Government's interest in protecting the public and the integrity and effectiveness of the removal process (by preventing flight prior to removal) is extremely weighty. *See Denko v. I.N.S.*, 351 F.3d 717, 730 (6th Cir. 2003) ("The INS has a strong interest in its procedures for accurate, efficient, and economical adjudication of immigration matters."). That is true even without a thumb on the scale, although it is worth noting the Sixth Circuit's clear directive that, given the political branch's extensive power over immigration and the judiciary's correspondingly limited role, in the immigration context the courts "should weigh heavily the government's interests in a *Mathews* ... due process determination." *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). A requirement for pre-detention hearings would seriously tax the Government's resources, as the Government would be forced to locate and provide notice to aliens on the front end, so as to coordinate pre-detention hearings. And a pre-detention hearing requirement would inhibit the Government's ability to detain aliens when they are located by chance or unexpectedly, while also making it easier for those who receive notice of a pre-detention hearing to abscond. All of these burdens would make it more difficult for immigration authorities to enforce the immigration laws enacted by Congress and process removals.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.** This case is **DISMISSED**. The Clerk **SHALL** close this case.

**IT IS SO ORDERED**, this 19th day of November, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE